1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11

12

13

14

15

16

17

18

19

20

21

22

23

DOMENIC JARELLE BETTS,
CDCR #AM-3604,

                                      Plaintiff,

            vs.

LISA TERRONEZ, Correctional Officer,

                                      Defendant.

Case No.:  25-cv-01296-MMA (DDL)

**ORDER:**

**(1) GRANTING RENEWED
MOTION TO PROCEED
*IN FORMA PAUPERIS***

**AND**

**(2) DIRECTING U.S. MARSHAL
TO EFFECT SERVICE OF
PROCESS PURSUANT
TO 28 U.S.C. § 1915(d)
AND Fed. R. Civ. P. 4(c)(3)**

**[Doc. No. 4]**

24

25

26

27

28

        Plaintiff Domenic Jarelle Betts, currently incarcerated at Salinas Valley State
Prison ("SVSP") and proceeding *pro se*, has filed a civil rights complaint pursuant to 42
U.S.C. § 1983.  *See* Doc. No. 1 ("Compl.").  Plaintiff claims Richard J. Donovan
Correctional Facility ("RJD") Correctional Officer Terronez retaliated against him on
May 24, 2023, when she destroyed his property and "put [him] in a cage" after he filed

1  "grievances and lawsuits" against her. *Id.* at 3.  Plaintiff seeks $50,000 in general and

2  punitive damages. *Id.* at 7.

3      On May 30, 2025, the Court denied Plaintiff leave to proceed *in forma pauperis*

4  ("IFP") because he failed to comply with 28 U.S.C. § 1915(a)(2), but granted him leave

5  to correct this deficiency. *See* Doc. No. 3 at 3.  On June 9, 2025, Plaintiff filed a renewed

6  IFP motion. *See* Doc. No. 4.

7      For the reasons explained, the Court grants Plaintiff's renewed Motion to Proceed

8  IFP, conducts a preliminary screening of his complaint pursuant to 28 U.S.C.

9  §§ 1915(e)(2) and 1915A(a), finds it alleges a plausible First Amendment retaliation

10  claim, and directs the United States Marshal to effect service of process upon Defendant

11  Terronez pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

12  **I.      RENEWED MOTION TO PROCEED IFP**

13      All parties instituting any civil action, suit or proceeding in a district court of the

14  United States, except an application for writ of habeas corpus, must pay a filing fee of

15  $405.[1] *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to pay the

16  entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP

17  pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th

18  Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023)

19  ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed

20  unless and until the fee[s] [a]re paid.").

21      "While the previous version of the IFP statute granted courts the authority to waive

22  fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act]

23  amended the IFP statute to include a carve-out for prisoners:  under the current version of

24  the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the

---

[1]In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023).  The $55 administrative portion of the fee does not apply to persons granted leave to proceed IFP. *Id.*

2

1  prisoner shall be required to pay the full amount of a filing fee.'"  *Hymas*, 73 F.4th at 767

2  (quoting 28 U.S.C. § 1915(b)(1)).  Section 1915(b) "provides a structured timeline for

3  collecting this fee."  *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

4      To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of

5  all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account

6  statement (or institutional equivalent) for . . . the 6-month period immediately preceding

7  the filing of the complaint."  28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d

8  1113, 1119 (9th Cir. 2005).  Using this financial information, the court "shall assess and

9  when funds exist, collect, … an initial partial filing fee," which is "calculated based on

10  'the average monthly deposits to the prisoner's account' or 'the average monthly balance

11  in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in

12  'monthly payments of 20 percent of the preceding month's income credited to the

13  prisoner's account."  *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)).

14  Thus, while prisoners may qualify to proceed IFP without having to pay the statutory

15  filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due

16  in monthly payments.  *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C.

17  § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

18      Here, Plaintiff's renewed requests comply with both 28 U.S.C. § 1915(a)(1) and

19  (2).  In support of his supplemental IFP Motion, Plaintiff has now submitted a copy of his

20  California Department of Corrections and Rehabilitation ("CDCR") Inmate Trust

21  Account Statement Report.  *See* Doc. No. 4 at 4–5; *see also* S.D. Cal. CivLR 3.2;

22  *Andrews*, 398 F.3d at 1119.  This report shows Plaintiff maintained an average monthly

23  balance of $1,144.50 in his prison trust account, and had $160 in average monthly

24  deposits credited to his account over the 6-month period immediately preceding the filing

25  of his complaint.  At the time of filing, Plaintiff's available balance was $565.89.  *See*

26  Doc. No. 4 at 4.  Accordingly, the Court **GRANTS** Plaintiff's renewed Motion to

27  Proceed IFP (Doc. No. 4) and assesses an initial partial filing fee of $288.90 pursuant to

28  28 U.S.C. § 1915(b)(1).  This initial fee need be collected, however, only if sufficient

1   funds are available in Plaintiff's account at the time this Order is executed.  *See* 28 U.S.C.

2   § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a

3   civil action or appealing a civil action or criminal judgment for the reason that the

4   prisoner has no assets and no means by which to pay the initial partial filing fee.");

5   *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve"

6   preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to

7   the lack of funds available to him when payment is ordered.").  The CDCR must

8   thereafter collect the full balance of the $350 total fee owed in this case and forward

9   payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

10   **II.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(a)**

11          A.   Standard of Review

12          Because Plaintiff is a prisoner and proceeding IFP, his complaint requires an initial

13   screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  Under these statutes, the

14   Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is

15   frivolous, malicious, fails to state a claim, or seeks damages from defendants who are

16   immune.  *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C.

17   § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc));

18   *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C.

19   § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or

20   malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d

21   903, 920 n.1 (9th Cir. 2014) (citation omitted).

22          "The standard for determining whether a plaintiff has failed to state a claim upon

23   which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

24   Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668

25   F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th

26   Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

27   applied in the context of failure to state a claim under Federal Rule of Civil Procedure

28   12(b)(6)").  Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to

1  "contain sufficient factual matter, accepted as true, to state a claim to relief that is

2  plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

3  marks omitted); *Wilhelm*, 680 F.3d at 1121.  Detailed factual allegations are not required,

4  but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5  conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The Court "ha[s] an

6  obligation where the petitioner is pro se, particularly in a civil rights case, to construe the

7  pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*,

8  627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1

9  (9th Cir. 1985)).  It may not, however, "supply essential elements of claims that were not

10  initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

11  1982).

12      B.    Discussion

13      "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a

14  method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490

15  U.S. 386, 393–94 (1989) (citation omitted).  "To state a claim under § 1983, a plaintiff

16  must allege two essential elements:  (1) that a right secured by the Constitution or laws of

17  the United States was violated, and (2) that the alleged violation was committed by a

18  person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d

19  1134, 1144 (9th Cir. 2021) (citing *Long v. County of Los Angeles*, 442 F.3d 1178, 1185

20  (9th Cir. 2006)).

21      "The most fundamental of the constitutional protections that prisoners retain are

22  the First Amendment rights to file prison grievances and to pursue civil rights litigation in

23  the courts, for '[w]ithout those bedrock constitutional guarantees, inmates would be left

24  with no viable mechanism to remedy prison injustices.'" *Entler v. Gregoire*, 872 F.3d

25  1031, 1039 (9th Cir. 2017) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir.

26  2005)).  Thus, "[p]risoners have a First Amendment right to file grievances against prison

27  officials and to be free from retaliation for doing so." *Watison* , 668 F.3d at 1114 (citing

28  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).  In the prison context, a First

1  Amendment retaliation claim has five basic elements:  "(1) An assertion that a state actor

2  took some adverse action against an inmate (2) because of (3) that prisoner's protected

3  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

4  rights, and (5) the action did not reasonably advance a legitimate correctional goal."

5  *Rhodes*, 408 F.3d at 567–68.

6       The Court has reviewed Plaintiff's complaint and finds it contains First

7  Amendment retaliation allegations sufficient to survive the "low threshold" set for *sua*

8  *sponte* screening.  *See Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121, 1123.

9  Specifically, Plaintiff claims Correctional Officer Terronez and her "partners"[2] saw him

10 early in the morning on May 24, 2023, and proceeded to "harass and target" him "due to

11 grievances and lawsuits [he] filed against them."  *See* Compl. at 3; *see also Watison*, 668

12 F.3d at 1114 ("The filing of an inmate grievance is protected conduct.").  After Terronez

13 and others searched him, Plaintiff told them he intended to file yet another lawsuit against

14 them.  *Id.*; *see Entler*, 872 F.3d at 1039 ("[T]he form of [a] complaint[]—even if verbal,

15 … is of no constitutional significance[;] [even] threats to sue fall within the purview of

16 the constitutionally protected right to file grievances.").  Minutes later, after he gathered

17 some legal paperwork from his cell, Plaintiff returned to his job, but was confronted

18 again.  *See* Compl. at 3.  Plaintiff alleges Terronez and others "stole" all his belongings

19 and legal work, "trashed them," laughed and taunted:  "I got you now," and "That's why

20 I messed up your day."  *Id.*; *see also Davis v. Hutcheson*, 2020 WL 3047437, at *2 (E.D.

21 Cal. June 8, 2020) (finding correctional officer's damage and/or destruction of prisoner's

22 property was sufficiently adverse consequence to sustain First Amendment retaliation

23 claim).  Plaintiff then alleges he was then "put [] in a cage for no reason at all."  *Id.*; *see*

24 *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("The plaintiff bears the burden of

25 pleading and proving the absence of legitimate correctional goals for the conduct of

26

27

28

---

[2] Plaintiff only identifies Terronez as one of the officers involved in the May 24, 2023 incidents, and he only names Terronez as a Defendant.  *See* Compl. at 2.

1   which he complains.").  Finally, Plaintiff claims Terronez later "admitted on camera"

2   during an Internal Affairs investigation that she "did these malicious acts," targeted him,

3   and destroyed his legal work "due to [his] lawsuits on 2 of her partners."  *Id.*; *see also*

4   *Sorranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) ("[A] plaintiff

5   alleging retaliation for the exercise of constitutionally protected rights must initially show

6   that [] protected conduct was a 'substantial' or 'motivating' factor in the defendant's

7   decision.") (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287

8   (1977)).

9       Thus, as pleaded, the Court finds Plaintiff's First Amendment retaliation

10  allegations are "sufficient to warrant . . . an answer."  *Wilhelm*, 680 F.3d at 1123.

11  Accordingly, it will direct U.S. Marshal service upon Defendant Terronez on his behalf.

12  *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and

13  perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that

14  service be made by a United States marshal or deputy marshal . . . if the plaintiff is

15  authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

16  **III.    CONCLUSION**

17      For the reasons discussed, the Court:

18      1)    **GRANTS** Plaintiff's renewed Motion to Proceed IFP pursuant to 28 U.S.C.

19  § 1915(a) (Doc. No. 4).

20      2)    **ORDERS** the Secretary of the CDCR, or his designee, to collect from

21  Plaintiff's trust account the $288.90 initial filing fee assessed, *if those funds are available*

22  *at the time this Order is executed*, and forward whatever balance remains of the full $350

23  owed in monthly payments in an amount equal to twenty percent (20%) of the preceding

24  month's income to the Clerk of the Court each time the amount in Phillips' account

25  exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

26      3)    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff

27  Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001,

28  via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

7

4)      **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (Doc. No. 1) and forward it to him along with a blank U.S. Marshal Form 285 for Defendant Terronez.  In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve Defendant Terronez.  Upon receipt of this "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, *include an address where Defendant Terronez may be found and/or subject to service*, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

5)      **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendant Terronez at the addresses provided by Plaintiff on the USM Form 285 provided, and to file an executed waiver of personal service upon Terronez with the Clerk of Court as soon as possible after its return.  Should Defendant Terronez fail to return the U.S. Marshal's requests for waiver of personal service within 90 days, the U.S. Marshal must instead file the completed Form USM 285 Process Receipt and Return with the Clerk of Court, include the date the summons, Complaint, and request for waiver were mailed to Defendant Terronez, and indicate why service remains unexecuted.  All costs of service will be advanced by the United States; however, if Defendant Terronez is located within the United States and fails without good cause to sign and return the waiver requested by the Marshal on Plaintiff's behalf, the Court will impose upon Defendant Terronez any expenses later incurred in making personal service.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6)      **ORDERS** Defendant Terronez, once served, to reply to Plaintiff's Complaint, *and any subsequent pleading Plaintiff may file in this matter in which she is named as a party*, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3).  *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility  under section 1983," once the

25-cv-01296-MMA (DDL)

1  Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2) and

2  § 1915A(b), and thus, has made a preliminary determination based on the face of the

3  pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits,"

4  defendant is required to respond); and

5        7)  **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to

6  serve upon Defendant Terronez, or if appearance has been entered by counsel, upon

7  Defendant's counsel, a copy of every further pleading, motion, or other document

8  submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b).  Plaintiff must

9  include with every original document he seeks to file with the Clerk of the Court, a

10  certificate stating the manner in which a true and correct copy of that document has been

11  served on Defendant Terronez or her counsel, and the date of that service.  *See* S.D. Cal.

12  CivLR 5.2.  Any document received by the Court which has not been properly filed with

13  the Clerk, or which fails to include a Certificate of Service upon Defendant Terronez or

14  her counsel, may be disregarded.

15        **IT IS SO ORDERED**.

16  Dated: July 7, 2025

17                HON. MICHAEL A. ANELLO

18                United States District Judge

19

20

21

22

23

24

25

26

27

28

25-cv-01296-MMA (DDL)